UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

EDINEZ GONCALVES NUNES,            )
                                   )
            Petitioner,            )
                                   )
      v.                           )            No. 2:25-cv-00357-JAW
                                   )
KEVIN JOYCE, et al.,               )
                                   )
            Respondents.           )

**ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS**

Lacking jurisdiction, the court dismisses the petitioner's petition for writ of habeas corpus.

## I.    BACKGROUND

Edinez Goncalves Nunes is a noncitizen from Brazil.  *Pet. for Writ of Habeas Corpus* ¶ 1 (ECF No. 1) (*Pet.*).  On June 25, 2025, Ms. Goncalves appeared before the Peabody District Court in Peabody, Massachusetts, for her arraignment on a misdemeanor assault and battery charge, where she was released upon her own recognizance.  *Pet.* ¶ 20; *Pet'r's Resp. to Resp'ts' Resp. to O.S.C. for Writ of Habeas Corpus*, Attach. 5, *Aff. of Counsel* ¶ 3 (ECF No. 23) (*Pet'r's Second Resp.*).  Upon her release, Immigration and Customs Enforcement (ICE) arrested Ms. Goncalves on June 25, 2025, to initiate removal proceedings before the Chelmsford Immigration Court in Chelmsford, Massachusetts.  *Pet.* ¶ 20.  She is currently detained at the Cumberland County Jail in Portland, Maine, pending removal proceedings.  *Id.* ¶ 25.

Ms. Goncalves filed her petition for writ of habeas corpus on July 11, 2025.  *Pet.* ¶ 1.  She claims ICE detained her "without cause" and that her detention violates the

Due Process Clause of the Fifth Amendment. *Id.* ¶¶ 20, 25, 30. On July 14, 2025, pursuant 28 U.S.C. § 2243, the Court ordered Respondents[1] to show cause why Ms. Goncalves's habeas petition should not be granted. *O.S.C.* (ECF No. 3).

On August 4, 2025, Respondents filed their response to the Court's show cause order.[2] *Return and Resp. to O.S.C. in Opp'n to Pet. for Writ of Habeas Corpus* (ECF No. 13) (*Resp'ts' Opp'n*). The Court held a telephone conference the following day, August 5, 2025, and stayed the case until Ms. Goncalves could appear for a bond hearing before an Immigration Judge. *Min. Entry* (ECF No. 15).

On August 21, 2025, Ms. Goncalves appeared before the Chelmsford Immigration Court for a bond hearing. *See Pet'r's Second Resp.* at 2. The Immigration Judge determined Ms. Goncalves is a danger to the community "based on multiple [criminal] charges pending against her," and denied her bond request. *Id.* at 3. Following the bond hearing, on August 25, 2025, the Court held a telephone

---

[1]    Kevin Joyce, in his official capacity as the Cumberland County sheriff, Major Tim Kortes, in his official capacity as Cumberland County Jail Administrator, Patricia Hyde, in her official capacity as Acting Director of the Boston Field Office of ICE, Michael Krol, in his official capacity as HSI New England Special Agent in Charge, Todd Lyons, in his official capacity as Acting Director of ICE, and Kristi Noem, in her official capacity as Secretary of the U.S. Department of Homeland Security (collectively, Respondents).

[2]    On July 16, 2025, the parties agreed to extend Respondents' deadline until August 4, 2025, because Ms. Goncalves was scheduled for a bond hearing before the Chelmsford Immigration Court the following day, July 17, 2025. *Unopposed Mot. to Continue Deadline for Resp. to O.S.C.* at ¶¶ 3-5 (ECF No. 7). At her July 17, 2025, bond hearing the presiding Immigration Judge denied Ms. Goncalves request for a continuance to obtain medical records she had not yet received but were critical to her bond request, and Ms. Goncalves withdrew her bond request with the intention to refile once she obtained those medical records. *Pet'r's Resp.* at 2. On August 1, 2025, Ms. Goncalves filed a motion to stay and hold in abeyance her habeas petition, pending receipt of her medical records and the outcome of her renewed request for bond. *Mot. to Stay and Hold in Abeyance the Pet. for Writ of Habeas Corpus* ¶ 4 (ECF No. 12).

2

conference with the parties, at which the Court maintained the stay until the parties filed additional briefing. *Min. Entry* (ECF No. 17).

On September 8, 2025, Ms. Goncalves filed her response, *Pet'r's Second Resp*, and three days later, on September 11, 2025, Respondents filed their reply.[3] *Resp'ts' Sur-Reply to Pet'r's Reply to Federal Resp'ts' Resp. to O.S.C. in Opp'n to Pet. for Writ of Habeas Corpus* (ECF No. 24) (*Resp'ts' Reply*).

On September 24, 2025, the Court issued a show cause order directing Respondents to "produce the warrant authorizing [Ms. Goncalves'] June 25, 2025 arrest and detention under 8 U.S.C. § 1226(a)." *Second O.S.C.* at 1 (ECF No. 25). That same day, Respondents supplied a copy of the Form I-200, "Warrant for Arrest of Alien," dated June 25, 2025, for Ms. Goncalves. *Resp. to O.S.C.*, Attach. 1 (ECF No. 26) (*Arrest Warrant*).

## II.    THE POSITIONS OF THE PARTIES

### A.    Respondents' Response to First Show Cause Order

On August 4, 2025, Respondents filed its response to Ms. Goncalves's petition for writ of habeas corpus. *Resp'ts' Opp'n* at 1-13. In their response, Respondents argued Ms. Goncalves's petition lacks merit and is untimely because her detention is authorized by statute and constitutional and she has not exhausted her administrative remedies. *Id.* at 7-13. Respondents urged the Court to dismiss her

---

[3]    On September 2, 2025, the parties again agreed to extend the deadline to file their supplemental briefs. *Agreed Upon Mot. to Extend Time for Pet'r's Resp. and Amend Scheduling Order* at 1 (ECF No. 20).

petition without prejudice but affirmed they were prepared to proceed with a hearing within five days if the Court did not dismiss the petition.  *Id.* at 13.

**B.    Edinez Goncalves Nunes's Initial Response**

In her initial response of September 8, 2025, Ms. Goncalves represented that on August 21, 2025, an Immigration Judge of the Chelmsford Massachusetts Immigration Court rejected her request for release because she was a danger to the community.  *Pet'r's Resp. to Gov't's Resp. to O.S.C. for Writ of Habeas Corpus* at 2 (ECF No. 22) (*Pet'r's' First Resp.*).  Ms. Goncalves argued the Immigration Judge was under the misimpression that she faced multiple charges in state court, including a misdemeanor assault and battery charge and a "more serious felony charge" of strangulation or suffocation, when in fact there was only one charge pending in Massachusetts state court, namely the misdemeanor assault and battery charge.  *Id.* at 3-4.  Ms. Goncalves says that this Court "may have jurisdiction to address the contention that the Immigration Court completely ignored key record evidence and mischaracterized the criminal charge brought by the Peabody, MA District Attorney as multiple charges instead of a single charge."  *Id.* at 4.  Ms. Goncalves also maintains that she does not have to exhaust administrative remedies, *id.* at 4-5, and finally, given the anticipated delay in the immigration process, she asks that the Court maintain the stay, requiring Respondents not to remove her until the full process is resolved.  *Id.* at 5-6.  Ms. Goncalves asks the Court to remand proceedings to the Immigration Judge to rehear her request for bond or to order her released pending further hearing.  *Id.* at 6.

### C.    Edinez Goncalves Nunes's Second Response

Shortly after filing her first response, also on September 8, 2025, Ms. Goncalves filed a second response, making the same arguments but attaching affidavits and documents in support of her factual contentions, and incorporating those documents into the response. *Pet'r's Second Resp.*, Attachs. 1-5.

### D.    The Respondents' Reply

On September 11, 2025, Respondents filed their reply. *Resp'ts' Reply* at 1-7. First, the Respondents contend that this Court does not have jurisdiction to hear Ms. Goncalves's objections to the Immigration Judge's hearing and to grant her requested relief. *Id.* at 1-2. Respondents distinguished this situation with a recent District of Maine case, where the Immigration Court denied the petitioner the right to any bond hearing at all. *Id.* at 3 (discussing *De Oliveira v. Joyce*, No. 2:25-cv-00291-LEW, 2025 U.S. Dist. LEXIS 125776 (D. Me. July 2, 2025)). Respondents suggested that if the Immigration Court erred, the proper avenue of relief is an appeal to the Board of Immigration Appeals (BIA). *Id.*

Next, Respondents posit 8 U.S.C. § 1226(e) as a jurisdictional bar to Ms. Goncalves's requested relief. *Id.* at 4. They maintain that Ms. Goncalves is not challenging the "statutory framework" of the Immigration Court's detention authority but to the Immigration Judge's discretionary ruling denying her release. *Id.* Finally, Respondents argue that the facts underlying Ms. Goncalves's conduct giving rise to the state criminal charge fully justify the Immigration Judge's denial of release. *Id.* at 6-7.

### III.    LEGAL STANDARD

The Immigration Nationality Act (INA) "channels immigration claims through the administrative process and sharply limits judicial review while that process is ongoing." *Sicha v. Bernal*, No. 1:25-cv-00418-SDN, 2025 U.S. Dist. LEXIS 169007, at *10 (D. Me. Aug. 29, 2025) (citing 8 U.S.C. § 1252(b)(9)).

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9).  Section 1252(b)(9), known as the "zipper clause," *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999), "squeezes claims relating to removal into the administrative process, only to release them for judicial review once a final administrative order is issued." *Sicha*, 2025 U.S. Dist. LEXIS 169007, at * 10.  Until a final order of removal issues, § 1252(b)(9) strips federal courts of jurisdiction to hear challenges to removal proceedings.  8 U.S.C. § 1252(b)(9) ("[N]o court shall have jurisdiction, by habeas corpus . . . or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact").

Despite the apparent breadth of the zipper clause, the First Circuit holds that the claims-channeling provision does not cover all claims by immigration detainees. *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 10 (1st Cir. 2007).  A noncitizen may raise claims "collateral to" the removal process — such as those that "cannot effectively be handled through the available administrative process" — in federal court. *Id.* at 11.  For example, "district courts

6

retain jurisdiction over challenges to the legality of detention in the immigration context." *Id.*

The INA gives the Government discretion to detain some noncitizens pending a decision on whether to remove them from the country. 8 U.S.C. § 1226(a). Discretionary detention is governed by § 1226(a), which affords the Attorney General "broad discretion" either to detain a noncitizen or to release them on bond or conditional parole during removal proceedings. *Nielsen v. Preap*, 586 U.S. 392, 409 (2019); 8 U.S.C. § 1226(a)(1)-(2). This provision applies when a noncitizen is "arrested and detained" "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). Following their arrest and detention "[o]n a warrant," and pending the completion of removal proceedings, § 1226(a) provides that the Attorney General, in their discretion, "may continue to detain the arrested [noncitizen]," or "release the [noncitizen] on . . . bond" or "conditional parole." 8 U.S.C. §§ 1226(a)(1)-(2). In the First Circuit, to detain a noncitizen subject to § 1226(a), "due process requires the government to either (1) prove by clear and convincing evidence that she poses a danger to the community or (2) prove by a preponderance of the evidence that she poses a flight risk." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021). "An I[mmigration] J[udge]'s decision to continue detaining a noncitizen may be further appealed to the BIA." *Id.* at 26 (citing 8 C.F.R. § 236.1(d)(3)).

An appeal from a BIA decision lies with the appropriate court of appeals, not the district court. *See* 8 U.S.C. §§ 1252(b)(9), 1252(a)(5) ("[A] petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for

judicial review of an order of removal"); *Aguilar*, 510 F.3d at 9 ("In enacting section 1252(b)(9), Congress plainly intended to put an end to the scattershot and piecemeal nature of the review process that previously had held sway in regard to removal proceedings").

## IV.    DISCUSSION

### A.    Arrest Warrant and Bond Hearing

Before the Court turns to the merits of the parties' positions, it first discusses cases recently decided by the district court in the District of Maine: (1) *De Oliveira*, 2025 U.S. Dist. LEXIS 125776, and (2) *Chafla v. Scott*, No. 2:25-cv-00437-SDN, 2:25-cv-00438-SDN, 2:25-cv-00439-SDN, 2025 U.S. Dist. LEXIS 184909 (D. Me. Sept. 2, 2025). In *De Oliveira*, the district court conditionally granted a petition for writ of habeas corpus because the Immigration Court had not held a bond hearing and therefore concluded that petitioner's continued detention violated due process. *De Oliveira*, 2025 U.S. Dist. LEXIS 125776, at *11-17. This case is readily distinguishable from *De Oliveira* because the Ms. Goncalves received a bond hearing.

In *Chafla*, the district judge scrutinized the statutory language in 8 U.S.C. § 1226(a)[4] and concluded that under § 1226(a), the Government is required to comply with the arrest warrant requirement in the statute. *Chafla*, 2025 U.S. Dist. LEXIS 184909, *34 (quoting 18 U.S.C. § 1226(a) ("*On a warrant issued by the Attorney General*, a[] [noncitizen] may be arrested and detained. . . .") (emphasis in order).

---

[4]    In *Chafla*, the government argued that the noncitizens were properly held under 8 U.S.C. § 1225(b)(2), which mandates detention. *Chafla*, 2025 U.S. Dist. LEXIS 184909, at *16. In its thorough order, the district court concluded that 8 U.S.C. § 1226(a), not § 1225(b)(2), applied. *Id.* at *16-27. Respondents in this case have not claimed that § 1225(b)(2) applies to Ms. Goncalves.

8

Because there was no evidence that any of the noncitizens was arrested pursuant to a warrant, the district judge ordered their release from detention "until they receive individual bond hearing pursuant to section 1226(a)." *Id.* at *35. Here, Respondents filed a copy of the warrant authorizing Ms. Goncalves's arrest. *See Arrest Warrant*. The critical facts in *Chafla* are distinguishable from the facts in this case.

### B.    Due Process Rights

#### 1.    Arrest Warrant

Because ICE detained Ms. Goncalves subject to a valid administrative warrant, the Court rejects Ms. Goncalves's claim that Respondents violated her right to due process when they arrested her "without cause." *Pet.* ¶¶ 20, 25. On June 25, 2025, ICE arrested Ms. Goncalves subject to an I-200 arrest warrant in compliance with § 1226(a). *Arrest Warrant* at 1-2. Ms. Goncalves has not claimed that the arrest warrant itself is defective or based on inaccurate information and therefore she has waived any argument to the contrary.

#### 2.    Bond Hearing

Because Ms. Goncalves appeared before the Chelmsford Immigration Court on August 21, 2025, to challenge her detention during removal proceedings, *Pet'r's Resp.* at 3, the Court is unable to conclude based on this record that she was denied due process regarding her continued detention, as she in fact received constitutionally-required due process when she appeared for her bond hearing before an Immigration Judge. *Hernandez-Lara*, 10 F.4th at 41. As the First Circuit wrote in *Hernandez-Lara*, "in order to continue detaining [a noncitizen] under section 1226(a), due process

requires the government to either (1) prove by clear and convincing evidence that she poses a danger to the community or (2) prove by a preponderance of the evidence that she poses a flight risk." *Id*. Ms. Goncalves has made no showing that the Immigration Judge failed to provide her with due process when the Immigration Judge held a detention hearing under *Hernandez-Lara*.

### 3. Appellate Process

In fact, as noted earlier, there is an additional layer of due process protection available to Ms. Goncalves since she is entitled to appeal the Immigration Judge's denial of her release to the BIA.[5]  *Hernandez-Lara*, 10 F.4th at 26 (citing 8 C.F.R. § 236.1(d)(3)).  Contrary to First Circuit authority, Ms. Goncalves fails to demonstrate how her claims "cannot effectively be handled through the available administrative process." *Aguilar*, 510 F.3d at 11.  Rather, her claims are "direct[ly] link[ed] to," and "inextricably intertwined with, the administrative process." *Id*. 510 F.3d at 10-13; *cf. Gicharu v. Carr*, 983 F.3d 13, 17-18 (holding § 1252(b)(9) barred federal court review of petitioner's claims of insufficient service and ineffective assistance of counsel because "they plainly 'arise from' the removal process").  Specifically, as noted earlier, whether Ms. Goncalves is a flight risk or a danger to the community are precisely the questions the First Circuit has directed an Immigration Judge to consider at a bond hearing.  *Hernandez-Lara*, 10 F.4th at 41.

---

[5]    A party may appeal an immigration judge's bond determination to the BIA by filing a Notice of Appeal from a Decision of an Immigration Judge (Form EOIR-26) within thirty days.  8 C.F.R. §§ 236.1(d)(3)(i), 1003.38(b).

Indeed, in her reply, Ms. Goncalves used careful language to urge the Court to accept jurisdiction over her claim. *Pet'r's Second Resp.* at 4 ("This Federal Court *may* have jurisdiction to address the contention that the Immigration Court completely ignored key record evidence and mischaracterized the criminal charge brought by the Peabody, MA District Attorney as multiple charges instead of a single charge") (emphasis supplied). But although Ms. Goncalves cites five cases in support of her proposition, none is a district court case. *Id.* Four are decisions from the First Circuit and one from the Third Circuit. *Id.* Ms. Goncalves has not presented this Court with a case supporting her argument that a district court, as opposed to the Court of Appeals, has jurisdiction over this type of claim.

### 4.    A Lack of Jurisdiction

The Court concludes that it lacks jurisdiction to reach Ms. Goncalves's remaining due process claims. Both claims – that she "cannot be expected to be reasonably removed from the country" because she is not a danger to the community or a flight risk, *Pet.* at 6, and that the Immigration Judge erred in relying on an allegedly unreliable police report, *Pet'r's Resp.* at 3 – are precisely the type of claims § 1226(a) strips from this Court's jurisdiction. In *Aguilar*, the First Circuit allowed district courts to assume jurisdiction over challenges to the removal process but only if the noncitizen's claims are "collateral to" the removal process. 510 F.3d at 11. It is not uncommon for a losing party to believe, even sincerely, that a judge failed to properly evaluate evidence and issued an erroneous ruling, but this type of finding goes to the heart of the Immigration Judge's determination at the bond hearing and

the Court cannot conclude it is collateral to the removal proceeding.  Because her claims arise from, and thus are not collateral to, her removal proceedings, the Court must dismiss her habeas petition for want of subject matter jurisdiction.

At bottom, Ms. Goncalves's due process claims in this habeas petition amount to a request to relitigate the Immigration Judge's bond determination in federal district court.  Such a scattershot approach to challenging one's removal proceedings is exactly the strategy Congress sought to eliminate with § 1252(b)(9).  *Aguilar*, 510 F.3d at 9 ("Congress plainly intended to put an end to the scattershot and piecemeal nature of the review process that previously had held sway in regard to removal proceedings" (citing H.R. Rep. No. 109–72, at 174 (2005) (Conf. Rep.), reprinted in 2005 U.S.C.C.A.N. 240, 299).

## V.    CONCLUSION

Accordingly, the Court DISMISSES Edinez Goncalves Nunes's Petition for Writ of Habeas Corpus (ECF No. 1) for lack of subject matter jurisdiction.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 29th day of September, 2025